FILED

JAN 0 5 2006

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

*******************************************************************

| | | |
|---|---|---|
| HERMAN SCHUMACHER, MICHAEL P. CALLICRATE, and ROGER D. KOCH, | * * * * | CIV 02-1027 |
| Plaintiffs, | * * | |
| -vs- | * * * | OPINION AND ORDER |
| TYSON FRESH MEATS, INC., CARGILL MEAT SOLUTIONS CORPORATION, d/b/a/ EXCEL CORPORATION, SWIFT BEEF COMPANY, and NATIONAL BEEF PACKING COMPANY, L.L.C., | * * * * * * | |
| Defendants. | * | |

*******************************************************************

## INTRODUCTION

The background for this case was set forth in Schumacher v. Tyson Fresh Meats, Inc., 2004 DSD 5, 221 F.R.D. 605 (D.S.D. 2004), and is restated here in condensed fashion as necessary for an understanding of some of the disputes pending before the court. Pursuant to the Livestock Mandatory Reporting Act of 1999 ("LMRA"), 7 U.S.C. §§ 1635-1636h, on April 2, 2001, the United States Department of Agriculture ("USDA") began collecting and publishing twice daily the boxed beef prices received by meat packers. On May 14, 2001, USDA discovered that it was incorrectly reporting the prices of "choice" and "select" boxed beef because USDA erroneously included the price of lower valued "no-roll" in computing choice and select boxed beef prices. The result was that the publicly reported prices of choice and select boxed beef were substantially lower than the correct prices which had been duly reported to USDA by the packers.

Plaintiff cattle producers brought suit against the four major packers claiming that they knowingly used the inaccurate prices published by USDA to negotiate the purchase of slaughter cattle from plaintiffs (and proposed class members) at prices substantially lower than would have been economically justified had plaintiffs known the accurate higher prices that defendants were

receiving for their boxed beef. Plaintiffs contend, *inter alia*, that defendants' conduct constituted unfair or deceptive practices, in violation of the Packers and Stockyards Act ("PSA"), 7 U.S.C. §§ 181-229. Plaintiffs also seek damages under common law unjust enrichment principles, alleging that cattle producers received many millions of dollars less than they would have been entitled to demand from defendants during that approximate six week period of time. This matter was certified as a class action.

Two of the issues for trial are whether the defendants knew or should have known that the boxed beef prices were incorrectly under-reported by the USDA during the class period and whether the incorrectly under-reported boxed beef prices caused lower market prices to be received by members of the class. To prove these matters, plaintiffs retained the services of Ted C. Schroeder, an agricultural economist from Kansas State University. Professor Schroeder conducted a multiple regression analysis[1] to estimate the effect the USDA reporting errors had on fed cattle prices. He concluded that the meat packers had to have known that the USDA was under-reporting boxed beef prices and that the under-reported prices resulted in producers receiving over $22 million less for their cattle, which was retained as a windfall, according to plaintiffs, by the packers.

Defendants hired Jerry A. Hausman, an econometrician at the Massachusetts Institute of Technology ("MIT"), to review Professor Schroeder's regression models. Professor Hausman concluded that Professor Schroeder's methodology was invalid and therefore his analysis does not provide a valid basis for concluding that the price reporting errors had an effect on fed cattle prices. Professor Hausman prepared what he called corrected regression models and concluded that there was no effect on fed cattle prices.

Defendants hired Stephen R. Koontz, an agricultural economist at Colorado State University, to evaluate whether Professor Hausman's regression model "makes sense" from an agricultural economist viewpoint. Professor Koontz prepared charts based upon Professor

---

[1] A multiple regression analysis is a statistical tool that attempts to reveal relationships between explanatory variables and a dependent variable. Morgan v. United Parcel Service of America, Inc., 380 F.3d 459, 466 (8th Cir. 2004) (*citing* Federal Judicial Center, Reference Manual on Scientific Evidence, p. 181 (2nd ed. 2000)).

Hausman's analysis which compare the relationship between fed cattle prices paid by packers and USDA boxed beef prices. He concluded that there is no statistical basis for concluding that USDA reporting errors affected fed cattle prices. Obviously, if Professor Koontz is correct in his opinion, the LMRA is of no value to anyone. He also concluded that there is no reason to believe the packers should have know that the USDA was under-reporting boxed beef prices.

In response to the reports from Professors Hausman and Koontz, Professor Schroeder prepared a "rebuttal report" attacking the validity of their analysis. Professor Schroeder's rebuttal report also sets forth a revised estimate of damages to producers of over $42 million. Damages to producers is of no legal consequence here. The question is: What damages were allegedly suffered by class members?

Plaintiffs filed a motion (Doc. 461) to exclude the testimony of Professor Koontz under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and Fed. R. Evid. 702. Defendants filed a motion (Doc. 466) to exclude the testimony of Professor Schroeder on the same basis. Defendants also filed a motion (Doc. 467) to exclude Professor Schroeder's rebuttal testimony pursuant to Daubert and because he allegedly changed his methodology, resulting in a doubling of damage estimates, which defendants contend is prejudicial. Hoping that the testimony of Professor Schroeder would be excluded, defendants filed a motion for summary judgment (Doc. 464).

The parties requested a "Daubert" hearing and a hearing was conducted in Minneapolis on November 22, 2005. Testimony was presented. All proposed expert witness as to the issues before the court were able to attend, testify, and be cross-examined.

After hearing the testimony and considering the arguments, the court expressed some thoughts and likely opinions on the record at the conclusion of the hearing in Minneapolis. A transcript of the hearing has been prepared and filed.

## DECISION

The admissibility of expert opinions is governed by Fed. R. Evid. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, or experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1)

3

> the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 requires a district court to act as a gatekeeper to ensure that expert testimony both rests on a reliable foundation and is relevant. Daubert, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993).

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Daubert, 509 U.S. at 592-93, 113 S.Ct. at 2796. The district courts have "great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." First Union Nat. Bank v. Benham, 423 F.3d 855, 861 (8th Cir. 2005).

Daubert set forth factors which will bear on the inquiry but the Supreme Court cautioned that these factors are not to be considered a definitive checklist or test. Daubert, 509 U.S. at 593, 113 S.Ct. at 2796. One of the factors to consider is whether a theory or technique can be and has been tested. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." Id.

Another factor is "whether the theory or technique has been subjected to peer review and publication." Id.

> Publication (which is but one element of peer review) is not a sine qua non of admissibility; it does not necessarily correlate with reliability . . . and in some instances well-grounded but innovative theories will not have been published. Some propositions, moreover, are too particular, too new, or of too limited interest to be published. But submission to the scrutiny of the scientific community is a component of "good science," in part because it increases the likelihood that substantive flaws in methodology will be detected. The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology.

Daubert, 509 U.S. at 593-94, 113 S.Ct. at 2797 (internal citations omitted).

"Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error . . . and the existence and maintenance of standards controlling the technique's operation." Daubert, 509 U.S. at 594, 113 S.Ct. at 2797 (internal citations omitted).

The final factor set forth in Daubert is general acceptance in the scientific community. "Widespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' may properly be viewed with skepticism." Daubert, 509 U.S. at 594, 113 S.Ct. at 2797 (internal citation omitted).

Defendants seek to exclude all testimony from Professor Schroeder as to his original regression analysis, this based upon Professor Hausman's conclusion that Schroeder's data was flawed because he failed to run two tests upon the data to determine the reliability of the results. In response, Professor Schroeder conducted the reliability tests and concluded that the adjustments Professor Hausman suggested were required did not appreciably change his results and that the Schroeder results were reliable.

The original Schroeder model testing for the effect of the boxed beef price on the price of fed cattle tested over a seven month period which started before the class period, encompassed the class period, and concluded after the class period. After he issued his initial report, Professor Schroeder reviewed his regression model and concluded that his data should be limited to the class period because the advent of mandatory reporting constituted a structural change. When he did so, his damages estimates doubled. The results of the more limited data analysis are the subject of Professor Schroeder's rebuttal report.

## I. Admission of Professor Schroeder's Multiple Regression Analysis.

Expert witnesses are frequently called upon to use their specialized training and experience to render opinions as to liability in civil litigation. Under Rule 702, proposed expert testimony is admissible only if (1) it is based upon sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Rule 702 is intended to weed out junk science. Many scientific techniques have already undergone Rule 702 scrutiny. For example, DNA, fingerprinting, and

handwriting evidence are now generally accepted types of scientific evidence that are reliable and admissible while polygraph evidence is generally considered unreliable. Daubert set forth factors to consider in determining whether a particular type of evidence relied upon by an expert is reliable and therefore admissible.

The scientific evidence at issue here is mathematical evidence upon which Professor Schroeder relies in forming his expert opinions. Neither party disputes that regression analysis is the type of scientific evidence that, in the proper case, is admissible under Rule 702. The Seventh Circuit has pointed out that

> Regression analysis is common enough in litigation to earn extended treatment in the Federal Judicial Center's Reference Manual on Scientific Evidence (2d ed. 2000). Regression has its own chapter (Reference Guide on Multiple Regression, prepared by Daniel L. Rubinfeld, at Reference Manual 179-228) and plays a leading role in two more: David H. Kaye & David A. Freedman, Reference Guide on Statistics, at Reference Manual 83-178, and Robert E. Hall & Victoria A. Lazear, Reference Guide on Estimation of Economic Losses in Damages Awards, at Reference Manual 277-332.

Zenith Electronics Corp. v. WH-TV Broadcasting Corp., 395 F.3d 416, 419 (7th Cir. 2005).

The focus of a Daubert analysis is "solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595, 113 S.Ct. at 2797. The Daubert factors and analysis have been applied to regression analysis and it has been found to be reliable and admissible. The issue here is not whether regression analysis is admissible because it is reliable but whether Professor Schroeder applied regression analysis reliably to the facts of this case.

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (*quoting* Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir.1995)). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." First Union Nat. Bank v. Benham, 423 F.3d 855, 862 (8th Cir. 2005) (*citing* Bonner v. ISP Tech., Inc., 259 F.3d 924, 929-30 (8th Cir.2001) (*quoting* Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir.1995))).

Defendants do not contend that regression analysis is junk science. Indeed, one of the defense experts has himself conducted a regression analysis which is substantially similar to Professor Schroeder's analysis. Professor Hausman claims that a correctly run regression analysis does not show a correlation between boxed beef prices and fed cattle prices. He contends that Schroeder's analysis is faulty because he failed to account for certain variables. However, "the question of what explanatory variables should be included in a particular regression normally 'affect[s] the analysis' probativeness, not its admissibility.'" Morgan v. United Parcel Service of America, Inc., 380 F.3d 459, 468 (8th Cir. 2004) (*quoting* Bazemore v. Friday, 478 U.S. 385, 400, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)). "[A] regression analysis does not become inadmissible as evidence simply because it does not include every variable that is quantifiable and may be relevant to the question presented . . . [I]t is for the finder of fact to consider the variables that have been left out of an analysis, and the reasons given for the omissions, and then to determine the weight to accord the study's results." Maitland v. Univ. of Minn., 155 F.3d 1013, 1017 (8th Cir.1998).

The defendants' objections to Professor Schroeder's two reports as they relate to whether he correctly ran his regression analysis relate to the weight to be given to Professor Schroeder's opinions. Professor Schroeder's opinions based upon the regression models he prepared will in general be admissible in evidence at trial. Of course, the court will at trial consider all objections as the testimony of all witnesses is offered.

## II. Admission of Professor Schroeder's Rebuttal Report.

Defendants contend that Professor Schroeder's opinions in his rebuttal report should be inadmissible because his rebuttal report is based upon new calculations. Professor Schroeder, upon further contemplation, determined that his calculations should be limited to the class period. He submitted a so-called rebuttal report wherein he limited the data used in his regression analysis. Defendants contend that the report constitutes improper rebuttal because his new calculations were not made in response to any criticisms raised by defendants' experts.

Rule 26(a)(2)(B) and this court's scheduling order require that expert witnesses and their reports "intended solely to contradict or rebut evidence on the same subject matter identified by another party" be disclosed within 30 days after the disclosure made by the other party. Defendants contend that, since Professor Schroeder's report was not prepared in rebuttal but rather to correct his initial report, it is improper and should be struck, as should any testimony

consistent therewith. Defendants read the Rules far too rigidly. The discovery process set forth in the Federal Rules of Civil Procedure is geared toward a search for the truth. Shelton v. American Motors Corp., 805 F.2d 1323, 1331 (8th Cir. 1986) (Battey, District Judge, dissenting). If an expert discovers that he has erred, it is during the discovery process that such errors should be disclosed. Professor Schroeder's rebuttal report was disclosed two weeks prior to his deposition and over seven months before trial. Defendants are not prejudiced in any way by the amended regression analysis conducted by Professor Schroeder. It is true that his revised opinion may subject the defendants to much greater damages than previously claimed but that is no reason to exclude the rebuttal report.

In any event, Rule 26(a)(2)(C) and Rule 26(e)(1) specifically impose a duty upon the parties to supplement expert disclosures, including rebuttal disclosures

> if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required . . . the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's [pretrial disclosures] are due.

Pursuant to Rule 26(a)(3), such pretrial disclosures are due 30 days prior to trial. Professor Schroeder's changes to his expert report were disclosed well before the deadline set forth in the Rules.

The Rules of Civil Procedure not only allow for disclosure of changes or corrections to expert reports but require such disclosure when the expert learns that his original calculations are or may be incorrect. Professor Schroeder's rebuttal report and any testimony based thereupon are not inadmissible as argued by defendants.

### III. Admission of Professor Koontz' Report.

Plaintiffs contend that Professor Koontz' report does not meet the Rule 702 standards for admissibility because the evidence would not assist the trier of fact and because the methodology used by Professor Koontz does not meet the Daubert standards. Koontz apparently, relying upon Professor Hausman's regression analysis, prepared charts which show whether Professor Hausman's report "makes sense" from an agricultural economist's point of view.

Plaintiffs contend that Professor Koontz did not do his own regression analysis and cannot rely upon Professor Hausman's analysis because he did not test Professor Hausman's data. "[A]n expert may extrapolate from data supplied by other experts." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005).

Plaintiffs contend that Koontz admits that his models are not meant to show cause and effect but merely the relationship between boxed beef values and fed cattle prices and are therefore not helpful to the jury. Even the best regression equation cannot prove causation. The most it can show is a correlation that can give rise to an inference that causation exists. Morgan v. United Parcel Service of America, Inc., 380 F.3d 459, 466 (8th Cir. 2004). Professor Koontz prepared charts which he claims show that there is no correlation between boxed beef values and fed cattle prices. This is a proper subject for expert testimony.

The court is satisfied that the Daubert requirements are met as to the expert witnesses. The court is satisfied that there are genuine issues of material fact for trial and no basis to grant a summary judgment and that the motion for a summary judgment should be denied.

Now, therefore,

IT IS ORDERED:

1. Plaintiffs' motion (Doc. 461) to exclude the testimony of Professor Stephen R. Koontz is denied.

2. Defendants' motion (Doc. 466) to exclude the testimony of Professor Ted. C. Schroeder is denied.

3. Defendants' motion (Doc. 467) to strike the rebuttal testimony of Professor Ted C. Schroeder is denied.

4) Defendants' motion for a summary judgment (Doc. 464) is denied.

Dated this 5th day of January, 2006.

BY THE COURT:

*Charles B. Kornmann*

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Barbara J. Daepple*
DEPUTY
(SEAL)