

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| HERMAN SCHUMACHER, MICHAEL P. CALLICRATE, and ROGER D. KOCH, | \* \* \* \* | CIV 02-1027 |
| Plaintiffs, | \* \* | |
| -vs- | \* \* | OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT |
| TYSON FRESH MEATS, INC., CARGILL MEAT SOLUTIONS CORPORATION, d/b/a/ EXCEL CORPORATION, SWIFT BEEF COMPANY, and NATIONAL BEEF PACKING COMPANY, L.L.C., | \* \* \* \* \* \* \* | |
| Defendants. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

This class action lawsuit was initiated by cattle producers against the four major packers seeking damages for alleged violations of the Packers and Stockyards Act ("PSA"), 7 U.S.C. §§ 181-229 and for unjust enrichment in violation of state law. Plaintiffs' claims arise out of the United States Department of Agriculture's error in publishing boxed beef prices pursuant to the Livestock Mandatory Reporting Act of 1999 ("LMRA"), 7 U.S.C. §§ 1635-1636h, between April 2, 2001, and May 14, 2001.[1] Plaintiff cattle producers claim that the defendants knowingly used the inaccurate prices published by USDA to negotiate the purchase of slaughter cattle from plaintiffs at prices substantially lower than would have been economically justified had plaintiffs known the accurate higher prices that defendants were receiving for their boxed beef. Defendants have filed a motion for summary judgment on all claims.

---

[1]For a more thorough background, see Schumacher v. Tyson Fresh Meats, Inc., 2004 DSD 5, 221 F.R.D. 605 (D.S.D. 2004).

I previously entered an opinion and order (Doc. 515) which summarily denied the motion for summary judgment without any explanation as to why the motion was denied. That is not a good practice for a judge. I had the draft of the present opinion and order, but, for some reason, neglected to complete it, sign it, and file it. I now do so, *nunc pro tunc*, to January 5, 2006.

## DECISION

The summary judgment standard is well known and has been set forth by this Court in numerous opinions. *See* Hanson v. North Star Mutual Insurance Co., 1999 D.S.D. 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Tripp County, 1998 D.S.D. 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 D.S.D. 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 D.S.D. 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary Judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996).

Defendants are entitled to summary judgment if plaintiffs fail "to establish the existence of an element essential to" the plaintiffs' case on which the plaintiff "will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the [plaintiffs'] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to plaintiffs and give plaintiffs the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98.

**Packers and Stockyards Act Claim.**

Plaintiffs claim that the defendants' use of the inaccurately reported boxed beef prices to negotiate the purchase of cattle constituted an unfair trade practice in violation of the PSA. Defendants contend that, in order to prevail on their PSA claim, plaintiffs must show that the packers' alleged conduct in violation of the PSA adversely affected competition. Defendants

contend that they are entitled to summary judgment on plaintiffs' PSA claim because plaintiffs cannot establish the existence of the element of adverse effect on competition.

Pursuant to Section 202 of the PSA, it is unlawful for any livestock packer to:

> (a) **Engage in or use any unfair**, unjustly discriminatory, **or deceptive practice** or device; or
> (b) Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or **subject any particular person** or locality **to any undue or unreasonable prejudice or disadvantage in any respect**; or
> (c) Sell or otherwise transfer to or for any other packer, swine contractor, or any live poultry dealer, or buy or otherwise receive from or for any other packer, swine contractor, or any live poultry dealer, any article for the purpose or with the effect of apportioning the supply between any such persons, if such apportionment has the tendency or effect of restraining commerce or of creating a monopoly; or
> (d) Sell or otherwise transfer to or for any other person, or buy or otherwise receive from or for any other person, any article for the purpose or with the effect of manipulating or controlling prices, or of creating a monopoly in the acquisition of, buying, selling, or dealing in, any article, or of restraining commerce; or
> (e) **Engage in any course of business or do any act for the purpose or with the effect of manipulating or controlling prices**, or of creating a monopoly in the acquisition of, buying, selling, or dealing in, any article, or of restraining commerce; or
> (f) Conspire, combine, agree, or arrange with any other person (1) to apportion territory for carrying on business, or (2) to apportion purchases or sales of any article, or (3) to manipulate or control prices; or
> (g) Conspire, combine, agree, or arrange with any other person to do, or aid or abet the doing of, any act made unlawful by subdivisions (a), (b), (c), (d), or (e) of this section.

7 U.S.C. § 192 (emphasis supplied).  The regulations provide that no packer

> shall knowingly make, issue, or circulate any false or misleading reports, records, or representation concerning the market conditions or the prices or sale of any livestock, meat, or live poultry.

9 C.F.R. § 201.53.

When the PSA was enacted in 1921,

> [t]he chief evil feared [was] the monopoly of the packers, enabling them unduly and arbitrarily to lower prices to the shipper, who sells, and unduly and arbitrarily to increase the price to the consumer who buys.  Congress

3

> thought that the power to maintain this monopoly was aided by control of
> the stockyards. Another evil, which it sought to provide against by the act,
> was exorbitant charges, duplication of commissions, deceptive practices in
> respect of prices, in the passage of the live stock through the stockyards,
> all made possible by collusion between the stockyards management and
> the commission men, on the one hand, and the packers and dealers, on the
> other. Expenses incurred in the passage through the stockyards necessarily
> reduce the price received by the shipper, and increase the price to be paid
> by the consumer.

Stafford v. Wallace, 258 U.S. 495, 514-15, 42 S.Ct. 397, 401, 66 L.Ed. 735 (1922). The primary

purpose of the PSA was thus two-fold - "to assure fair competition *and* fair trade practices in

livestock marketing and in the meatpacking industry." H.Rep. 85-1048, 1958 U.S.C.C.A.N.

5212, 5213 (emphasis supplied). "The objective is to safeguard farmers and ranchers against

receiving less than the true market value of their livestock and to protect consumers against

unfair business practices in the marketing of meats, poultry, etc." *Id. Accord* Van Wyk v.

Bergland, 570 F.2d 701, 704 (8th Cir. 1978) (*quoting* Bruhn's Freezer Meats v. United States

Department of Agriculture, 438 F.2d 1332, 1337 (8th Cir. 1971)), (one purpose of the PSA was

"to assure fair trade practices in the livestock marketing . . . industry in order to safeguard

farmers and ranchers against receiving less than the true market value of their livestock."). The

PSA was "not intended merely to prevent monopolistic practices, but also to protect the livestock

market from unfair and deceptive business tactics." Spencer Livestock Commission Co., 841

F.2d 1451, 1455 (9th Cir. 1988) (interpreting the language "any unfair, unjustly discriminatory,

or deceptive practice" as used in § 213(a) of the PSA concerning market agencies).

Sections 202(c), (d), and (e) of the PSA, 7 U.S.C. § 192(c), (d), and (e), address activities

that have an adverse effect on competition by creating a monopoly. "However, the language in

section 202(a) of the Act does not specify that a 'competitive injury' or a 'lessening of

competition or a 'tendency to monopoly' be proved in order to show a violation of the statutory

language." Wilson & Company v. Benson, 286 F.2d 891, 895 (7th Cir. 1961). Instead, section

202(a) of the PSA refers to "unfair" or "deceptive" practices. The Eighth Circuit has held that a

practice is "unfair" under § 192(a) "if it injures or is likely to injure competition." Farrow v.

United States Department of Agriculture, 760 F.2d 211, 214 (8th Cir. 1995). This statement

obviously states the law. Defendants would have the court read Farrow as holding that a practice

4

is unfair *only* if it injures or is likely to injure competition. That is simply not the law. It is akin to a statement that red is a color. This does not tell us that blue is not a color. The PSA must be broadly construed as condemning "any practices that inhibit the fair trading of livestock" by those persons and entities covered under the Act." Farrow v. United States Department of Agriculture, 760 F.2d at 214. The lack of competition between buyers, resulting in the possible depression of producer's prices was *one* of the evils at which the PSA was directed. *Id.* at 215 (emphasis supplied) (*citing* Swift & Company v. United States, 393 F.2d 247, 253 (7th Cir. 1968)).

The defendants rely upon what they claim is the Eighth Circuit's holding in IBP, Inc. v. Glickman, 187 F.3d 974, 977 (8th Cir. 1999), that § 192(a) requires that the alleged unfair practice actually or have the potential to reduce competition. However, that case concerned IBP's "group marketing agreement" with a group of Kansas feedlots. That case did not hold that the PSA *in toto* is limited to conduct that reduces competition or has the potential to do so.

The Eleventh Circuit has issued two recent opinions interpreting the PSA upon which the defendants rely. In London v. Fieldale Farms Corp., 410 F.3d 1295, 1302 (11th Cir. 2005), the Eleventh Circuit held that "in order to prevail under the PSA, plaintiff must show that defendant's deceptive or unfair practice adversely affects competition or is likely to adversely affect competition." The Eleventh Circuit's narrow construction of the term "unfair" was based upon the PSA's anti-trust history and a narrow reading of the case law interpreting the PSA. For example, the London panel cited the language in Stafford v. Wallace 258 U.S. at 514-15, 42 S.Ct. at 401 that, at the time of the enactment of the PSA, "the chief evil Congress feared was the monopoly of the packers." London, 410 F.3d at 1302. However, as set forth above, Stafford v. Wallace also recognized Congress' concern that the packers were employing deceptive practices to lower the price to the shipper, that is, the cattle producer.

London also, I respectfully submit, cites incorrectly to cases from other circuits for the claimed proposition that any PSA claim requires a showing that the challenged practice adversely affects competition. London cites the Eighth Circuit decision in Farrow as standing for the proposition that "only those unfair, discriminatory or deceptive practices adversely affecting competition are prohibited by the PSA." London, 410 F.3d at 1303. The challenged bidding

agreement in Farrow did result in the lack of competition between buyers, but, as set forth above, Farrow does not state that *only* practices that adversely affect competition are prohibited by the PSA.

London also cites the Seventh Circuit's opinion in Pacific Trading Co. v. Wilson & Co., 547 F.2d 367, 369-70 (7th Cir. 1976). In that case, plaintiffs claimed that defendant's sale of "off-condition" frozen hams constituted a breach of contract, violated the PSA, the U.S. Warehouse Act, 7 U.S.C. § 270, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331, and the Federal Meat Inspection Act, 21 U.S.C. Sec. 610. The Seventh Circuit, in analyzing the PSA claim, held that the PSA "is a statute prohibiting a variety of unfair business practices which adversely affect competition." Pacific Trading Co. v. Wilson & Co., Inc., 547 F.2d at 369.

Neither the PSA's purpose of preventing monopolistic practices nor its purpose of protecting producers from receiving less than the true market value of their livestock was impacted by the facts in Pacific Trading Co. It therefore is not instructive in this case. The Seventh Circuit has held that, where dealers engaged in conduct which "created a profit not dictated by normal market forces," such actions would violate "the prohibition against unfair or deceptive practices" in the dealer portion of the PSA, 7 U.S.C. § 213(a). United States v. Lehman, 887 F.2d 1328, 1330 (7th Cir. 1989). That case is more on point than Pacific Trading Co. The Seventh Circuit has also noted that a dealer practice of obtaining price quotes from packers would be illegal under the PSA if made for the purpose of manipulating livestock prices or controlling the movement of livestock. Swift & Co. v. United States, 308 F.2d 849, 854 (7th Cir. 1962). The Seventh Circuit has not limited the PSA to circumstances adversely affecting competition

Defendants also rely upon the Eleventh Circuit's opinion in Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272 (11th Cir. 2005), for the proposition that plaintiffs must show that defendants' alleged use of misreported boxed beef prices adversely affected competition. Pickett held that a § 202(a) unfairness claim and a § 202(e) price manipulation or control claim both require a plaintiff to show an adverse effect on competition. *Id.* at 1280, relying upon London. The Eleventh Circuit concluded that the use of marketing agreements to purchase a portion of

Tyson's weekly fed cattle needs was not a violation of § 202(a) of the PSA because Tyson showed pro-competitive justification for the use of such agreements. *Id.* at 1281.

I decline to follow the Eleventh Circuit's opinions in <u>London</u> and <u>Pickett</u>. Section 202 of the Supreme Court denied the petition for a writ of *certiorari* in <u>London v. Fierdale Farms. London v. Fieldale Farms Corp.</u>, 126 S.Ct. 752, 163 L.Ed.2d 574 (Nov 28, 2005). The Supreme Court also denied the petition for a writ of *certiorari* in <u>Pickett</u>. *Pickett v. Tyson Fresh Meats, Inc.*, ___ S.Ct. ____, 2006 WL 46449 (Mar 27, 2006).

I decline to follow the Eleventh Circuit's opinions in <u>London</u> and <u>Pickett</u>. Section 202 of the PSA is broader than its antecedent antitrust legislation and in some cases proscribes practices which the antitrust Acts would permit. <u>De Jong Packing Co. v. United States Dep't. of Agriculture</u>, 618 F.2d 1329, 1335 n. 7 (8th Cir. 1980). The "[p]ackers and Stockyards Act is remedial legislation and should be liberally construed to further its life and fully effectuate its public purpose." <u>Bruhn's Freezer Meats of Chicago, Inc. v. U. S. Dept. of Agriculture</u>, 438 F.2d 1332, 1336 (8th Cir. 1961). "The terms 'unfair, unjustly discriminatory, or deceptive practice or device," as used in the PSA "are not defined, and their meaning must be determined by the facts of each case within the purposes of the Packers and Stockyards Act." <u>Capitol Packing Co. v. United States</u>, 350 F.2d 67, 76 (10th Cir. 1965). One of the purposes was to prohibit deceptive practices with respect to the price paid to the producer for livestock. Section 202 of the PSA, 7 U.S.C. § 192(a), does not prohibit only those unfair and deceptive practices which adversely affect competition.

Plaintiffs assert that this court should give <u>Chevron</u>[2] deference to the USDA's interpretation of the PSA, which plaintiffs claim supports the conclusion that no anti-competitive effect is required. Even before <u>Chevron</u>, the Eighth Circuit recognized that great deference should be accorded the Secretary of Agriculture's construction of the PSA. <u>Van Wyk v. Bergland</u>, 570 F.2d 701, 705 (8th Cir. 1978). Defendants contend that the USDA has not consistently ruled on that issue. It is unnecessary to address this issue because the PSA and its

---

[2]<u>Chevron U.S.A. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984), held that, if the intent of Congress is not clearly expressed, the courts must give deference to the construction of an ambiguous statute by the administrative agency charged with administering the statute.

legislative history clearly do not require that a § 192(a) claimant show that the alleged unfair practice adversely affected competition.

Defendants contend that plaintiffs' PSA claims must be rejected because plaintiffs are effectively asking "the Court to rewrite thousands of cattle purchase contracts, years after the fact." That argument is rejected. No case has held that the PSA is inapplicable where the parties have entered into a contract. A party to a contract who engages in conduct contrary to expressed federal law cannot defend on the basis that the plaintiff waived any federal rights solely by entering into the contract.

Defendants contend that plaintiffs' PSA claims must be rejected because plaintiffs have failed to discover which class members sold cattle to defendants during the class period which cattle were hedged in the futures market. Defendants contend that if class members succeeded in locking in a price by hedging in the futures market, then they suffered no damages. Mitigation of damages is an affirmative defense which must be plead and proved by defendants. Fed. R. Civ. P. 8(c), Sayre v. Musicland Group, Inc., a Subsidiary of American Can Co., 850 F.2d 350, 352 (8th Cir. 1988), Modern Leasing, Inc. of Iowa v. Falcon Mfg. of California, Inc., 888 F.2d 59, 62 (8th Cir. 1989). Plaintiffs are under no duty to discover and offer proof as to class members who hedged.

**South Dakota Unjust Enrichment Claim.**

Defendants claim they are entitled to summary judgment on the unjust enrichment claims based upon South Dakota law because none of the slaughter cattle sold during the class period were slaughtered in South Dakota. I reject this. The place of slaughter does not govern the choice of law.

Defendants also claim that they are entitled to summary judgment on any unjust enrichment claims subject to South Dakota law or that of states with identical elements because there can be no unjust enrichment claim where there has been an express contract. Defendants claim that they did not know the boxed beef prices were under-reported. The plaintiffs did not know until USDA announced the error. Under South Dakota law, where there has been a mutual mistake of fact, "no contract results because there is no meeting of the minds." Beatty v. Depue, 78 S.D. 395, 400, 103 N.W.2d 187, 190 (1960). Plaintiffs did not seek rescission but that would

8

have been impossible because the cattle had long since been slaughtered when USDA announced its reporting errors.  If there was no meeting of the minds and thus, no contract, an unjust enrichment claim would not thereby be precluded.

Genuine issues of material fact exist precluding summary judgment.

Now, therefore,

IT IS ORDERED that, *nunc pro tunc* to January 5, 2006, defendants' motion for summary judgment, Doc. 464, is denied.

Dated this 30th day of March, 2006.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY _____ DEPUTY
(SEAL)

9