

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED
AUG 16 2006
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| HERMAN SCHUMACHER, MICHAEL P. CALLICRATE, and ROGER D. KOCH, | * * * * | CIV 02-1027 2006 D.S.D. 12 |
| Plaintiffs, | * * | OPINION AND ORDER |
| -vs- | * * | |
| TYSON FRESH MEATS, INC., CARGILL MEAT SOLUTIONS CORPORATION, d/b/a EXCEL CORPORATION, SWIFT BEEF COMPANY, and NATIONAL BEEF PACKING COMPANY, L.L.C., | * * * * * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### KORNMANN, U.S. DISTRICT JUDGE

[¶1]   The defendants (other than National Beef and hereinafter "defendants") have filed a renewed motion for judgment as a matter of law (Doc. 1035). Defendants correctly point out that, based on the Professor Schroeder formula, Schroeder being the expert witness for plaintiffs, the plaintiffs demanded $38,319,545.00 from all defendants. The jury obviously decided to award plaintiffs nothing as to National Beef. They found no liability on the part of National Beef. The jury did award damages of $9,250,000.00 in separate amounts against the defendants. The award against Tyson was $4,000,000.00. The award against Excel was $3,000,000.00. The award against Swift was $2,250,000.00.

[¶2]   There is no dispute that the jury found defendants liable for damages for violations of the Packers and Stockyards Act ("PSA"). Carried to a logical conclusion, it would seem that defendants now advance the proposition that the jury had no basis to award damages less than the amount sought by plaintiffs, as explained by Professor Schroeder. It may turn out, of course, that the amounts awarded will be insufficient to fully compensate class members who did not opt out

and still have valid claims. But of what concern is that to defendants? Valid and supportable individual claims from class members may need *pro rata* reductions. That remains to be seen. It is frankly a curious argument for defendants to complain about the action of the jury in awarding less than was sought under the Professor Schroeder formula. Defendants are the beneficiaries of the jury action and are certainly not damaged, assuming that liability exists, as found by the jury. Defendants have no standing to complain about an inadequate jury verdict. The "standing doctrine" is usually applied in examining questions of federal jurisdiction. It embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. See, for example, Allen v. Wright, 468 U.S. 737, 751 (1984). I have been a lawyer since 1962. Most of my law practice before taking the bench in 1995 was composed of insurance defense work. I have not previously heard of defendants in effect attacking a jury verdict as being too low because a formula called for a much larger award. Defendants have no standing in that regard. I fully realize, of course, that defendants have the right and the "standing" to attack a jury verdict as being based on what they claim is nothing but speculation. That will be discussed in due course.

[¶3]    Defendants had the same rights as the plaintiffs to request special interrogatories to the jury. They did not ask for a better or more detailed "break-down" of the damages or methods used by the jury to determine damages although they knew the court had already prepared a significant number of special interrogatories and intended to use them pursuant to Fed.R.Civ.P. 49. Any jury instruction not requested is waived pursuant to Fed.R.Civ.P. 51. Daggitt v. United Food & Com. Workers Int'l Union, Local 304A, 245 F.3d 981, 985 (8th Cir. 2001). The jury was not asked to find anything as to the formula but only to decide on a dollar amount of damages. No special interrogatory to the jury was proposed by defendants as to the formula. Thus, it is impossible to sort out what portion of the Schroeder formula was used by the jury.

[¶4]    The court is to assume that the jury followed the instructions of the court as to the applicable law. The jury was instructed in instruction 16, in part, as follows: "Whether any

damages have been proved by the evidence is for you to determine. Your verdicts must be based on evidence and not upon speculation, guesswork, or conjecture. In determining the amount of damages, if any, you may estimate the amount as a matter of just and reasonable inference without resorting to speculation or guesswork." The jury was also instructed that they could "believe all of what a witness said, or only part of it, or none of it." The jury obviously believed only part of the testimony of Dr. Schroeder. The jury was also instructed that they could give the testimony of any witness such credibility or weight as they thought it deserved. They were also told that they could give the testimony of experts such weight as they thought the testimony deserved. It is obvious that the jury did that.

[¶5]   This trial was, of course, designed to first answer questions of liability on the part of defendants. The jury answered that in no uncertain terms. The jury decided the exact basis of liability. The jury carefully found that defendants knew of the USDA reporting errors on April 24, 2001, and took advantage of such knowledge thereafter. I determine that there was a sufficient basis in the evidence for a reasonable jury to find liability on the part of defendants. The motion has no merit as to the question of liability.

[¶6]   The jury also decided issues of damages. I find that there was a sufficient basis in the evidence for a reasonable jury to find that defendants damaged plaintiffs and that National did not. I find also that there was a sufficient basis in the evidence for a reasonable jury to find that the damages amounted to as much as $38,319,545.00. As explained above, defendants claim there was no sufficient basis in the evidence for a reasonable jury to find that the damages amounted to $9,250,000.00. One might categorize that position as "looking a gift horse in the mouth."

[¶7]   It is of some note that defendants have not sought, in the alternative, a new trial. The wisdom of such strategy is obvious. The last thing defendants would want would be a new trial on damages only, liability having been determined as a matter of law. Yet that would be the normal remedy should the court determine that the jury awarded damages without any reasonable basis in the evidence to do so. The court could have proceeded *sua sponte* to grant a new trial on the issue of damages only. Fed.R.Civ.P. 59(d). The time to do so has passed. It would be an

enormous injustice to grant a judgment as a matter of law based on the amount of the damages awarded where liability for substantial damages was clearly established.

[¶8]    The contentions of defendants that the class cannot ultimately recover damages suffered by opt-outs is true, of course. Only class members who provide a sufficient basis to recover from a portion of the jury awards will recover. It is possible that the total recoveries will be less than the jury awards. If so, the defendants are the beneficiaries. They are not harmed in any way by such procedure. It is no concern of the court as to what damages were sustained by the 244 producer opt-outs. The ultimate question will be what damages were sustained by class members individually. There is no risk of multiple liabilities being incurred by defendants.

[¶9]    Defendants again raise the claim that successful hedgers were not damaged by defendants and therefore cannot recover. For all we know, the jury may have bought, wholly or in part, the arguments of defendants in that regard and reduced the damages accordingly. Questions as to claims of successful hedgers who are class members remain to be answered. As I have previously ruled, the question of mitigation of damages would be items of proof by defendants. Finally, questions of successful hedgers within the class raise legal questions as to whether and how to apply the collateral source doctrine. This is ultimately a matter of law for the court.

[¶10]    The jury may also have decided, based on evidence and arguments submitted by the defendants, that many cattle producers paid little or no attention to the USDA cutout averages. The jury may have reduced the damages accordingly. Defendants made many arguments to the jury and now complain that the jury may have "bought" some of them. Defendants were all represented by very able attorneys. They continuously fired salvos at the plaintiffs' case and the witnesses for plaintiffs. Defendants presented excellent defenses and mitigating circumstances. The jury was appropriately instructed as to the claims and defenses in this case. The jury obviously bought some of the arguments of defendants but not all. The jury was asked to answer the question as to when the defendants had knowledge of the USDA errors. The jury provided a date of April 24, 2001. Plaintiffs were contending that earlier dates should be used. The use of an earlier date would increase the amount of damages to be awarded. The use of a later date would decrease the amount of damages to be awarded.

[¶11]   As was the case in <u>Melford Olsen Honey, Inc. v. Adee</u>, 452 F.3d 956 (8th Cir. 2006), how the jury arrived at its damages calculations is unclear. One question is whether the damages awarded are reasonable, despite being imprecise. Another question is whether, resolving factual disputes in favor of the non-moving party (plaintiffs), a "reasonable jury could differ as to the conclusions that could be drawn" from the evidence presented at trial. <u>Manning v. Metro. Life Ins. Co., Inc.</u>, 127 F.3d 686, 689-90 (8th Cir. 1997). I find that a reasonable jury could differ. The damages awarded "need not match any certain projected number provided the award falls within the mathematical limitations set forth by the witnesses and the trial evidence as a whole. <u>Children's Broad. Corp. v. Walt Disney Co.</u>, 357 F.3d 860, 865 (8th Cir. 2004)." <u>Melford Olsen Honey</u> at 967.

[¶12]   I will examine some of the South Dakota Supreme Court case law dealing with damages. In <u>Swenson v. Chevron Chemical Co.</u>, 234 NW2d 38 (SD 1975), the court quoted from 22 AmJur2d, Damages, §23, page 42: "Damages are not rendered uncertain because they cannot be calculated with absolute exactness or because the consequences of the wrong are not precisely definite in pecuniary amount. An element of uncertainty in the amount of damages or the fact that they cannot be calculated with mathematical accuracy or with absolute certainty or exactness is not a bar to recovery. Nor is mere difficulty in the assessment of damages a sufficient reason for refusing them where the right to them has been established."

[¶13]   The South Dakota Supreme Court has decided to "refrain from dictating any specific formula for calculating damages. Instead, we apply a 'simple reasonable certainty test concerning the proof needed to establish a right to recover damages.'" <u>McKie v. Huntley</u>, 2000 SD 160, ¶18, 620 NW2d 599, 603 (quoting <u>Drier v. Perfection, Inc.</u>, 259 NW2d 496, 506 (SD 1977)). "This Court has noted that the difficulty in computing damages should not be confused with the requirement of proving damages as an essential element for recovery. <u>McKie</u>, 2000 SD 160, ¶20, 620 NW2d at 604 (quoting Seattle Western Indus., Inc. v. David A. Mowat Co., 110 Wash2d 1, 750 P.2d 245, 249 (1988)). After providing sufficient evidence of damages, the claimant must only produce the best evidence available to allow a jury a reasonable basis for calculating the loss. <u>Id.</u> [¶33.]" <u>Lord v. Hy-Vee Stores</u>, 2006 SD 70, ___ NW2d ___, ___ (SD). <u>Flagtwet v. Smith</u>, 367 NW2d 188 (SD 1985), was an action for alienation of affections.

5

The Supreme Court cited with approval language from a 1960 Michigan case, Wycko v. Gnodtke, 105 NW2d 118, 123, noting that "it is not the privilege of him whose wrongful act caused the loss to hide behind the uncertainties inherent in the very situation his wrong created."

[¶14]   Schmidt v. Wildcat Cave, Inc., 262 NW2d 114 (SD 1977), quoted from Kowing v. Williams, 67 NW2d 780, 783 (SD 1954): "The authorities recognize a distinction between uncertainty as to the cause or fact of damages and uncertainty as to the amount. *See* Annotation in 78 A.L.R. 858. The rule against indefinite or uncertain damages applies only to such damages as are not the definite or certain results of the wrong. Uncertainty as to the fact is fatal to recovery, but uncertainty as to the measure or extent of the damages does not bar recovery." That is exactly the rule which will be applied here.

[¶15]   Smith v. Highmore Farms, 489 NW2d 908 (SD 1992), quoted from Tri-State Refining and Inv. Co. v. Apaloosa Co., 452 NW2d 104, 110 (SD 1990) (which in turn had quoted from Wildcat Cave): "Under any damage model, 'there need only be a reasonable basis for measuring the loss and it is only necessary that damages can be measured with reasonable certainty.'" The court further noted that the absence of farm records or expert agricultural witnesses only went to the amount of damages. The court quoted further from Tri-State Refining, 452 NW2d at 110: "Where doubt exists as to certainty of damages, those doubts should be resolved against the wrongdoer." I adopt that same rule here.

[¶16]   Walling Chemical Co. v. Bigner, 349 NW2d 647 (SD 1984), is also helpful to the court's analysis. The Supreme Court found that the evidence as to damages was not purely speculative. "In addition, Walling Chemical points out that certainty as to damages addresses whether in fact damages have been sustained. *Basic Chemicals, Inc. v. Benson*, 251 NW2d 220 (Iowa 1977). Because the uncertainty lies only in the amount of damages rather than the existence of damages, and there is proof of a reasonable basis from which the amount can be inferred, Walling Chemical may recover. *See Basic Chemicals, Inc., supra.*" I adopt this reasoning as well. Walling also points out the well known rule that, in connection with a motion for a judgment as a matter of law all evidence must be considered "in a light most favorable to the nonmoving party" and the court must give the nonmoving party "the benefit of all reasonable inferences." To the same effect, *see* Cox v. Brookings International Life Ins. Co., 331 NW2d 299, 300 (SD 1983). I

follow this rule. The findings of fact made by the jury must be unreasonable, arbitrary and unsupported in light of the other evidentiary facts proven. Lewis v. Storms, 290 NW2d 494, 497 (SD 1980). I am unable to make any such finding here.

[¶17]   O'Brien v. R-J Development Corp., 387 NW2d 521 (SD 1986), states the well known rule that "it is the fact of damages that cannot be uncertain. R. Dunn, Recovery of Damages for Lost Profits, 2d (2nd ed. 1981)." The fact of damages in the present case is clearly not speculative, contingent, or uncertain. Iowa law holds that "[t]he determination of damages is traditionally a jury function. A jury's assessment of damages should be disturbed 'only for the most compelling reasons.'" Estate of Pearson v. Interstate Power & Light Co., 700 NW2d 333, 345 (Iowa 2005), quoting Rees v. O'Malley, 461 NW2d 833, 839 (Iowa 1990). Likewise, we find this in Foggia v. Des Moines Bowl-O-Mat, Inc., 534 NW2d 889, 891 (Iowa 1996) (quoting from Kautman v. Mar-Mac Cmty. Sch. Dist., 255 NW2d 146, 148 (Iowa 1977): "Although evidence presented at trial may justify a higher damage award, this alone does not control. The key question is whether after examining the record, 'giving the jury its right to accept or reject whatever portions of the conflicting evidence it chose, the verdict effects substantial justice between the parties." I believe the law is the same in South Dakota. I find that substantial justice was done in the present case.

[¶18]   This is not a case under the Sherman Act or the Clayton Act. Nor is it a case under the Commodities Exchange Act or the Securities Exchange Act. Defendants complain that plaintiffs did not prove relevant geographic markets or market shares. Yet it was defendants who made every effort to keep the jury from hearing of the very heavy concentration that exists in the beef packing industry. We know, for example, that defendants control approximately 70% of the beef packing industry. Including National, the market share is 80% or higher. Again, however, this is not an antitrust action. It is an action controlled by the PSA and we have all been sailing in somewhat uncharted waters.

[¶19]   I continue to reject the claims of defendants that they are entitled to a trial by a jury and an Article III judge dealing with the amount of the claim of each class member and the right to recover itself. Such a procedure would doom any class action. Defendants do not have the rights they claim to have. They had a fair trial by a jury to determine both liability on the part of all

defendants and overall damages suffered by a clearly defined group of cattle producers. They are not entitled to more at this point.

[¶20] Defendant Swift has filed an additional brief (Doc.1038-2) raising a claim that there is no private right of action under the PSA. In a reply brief (Doc.1049), Swift and Cargill weave in the Livestock Mandatory Reporting Act ("LMRA"). The claim boils down to a contention that the LMRA amended the PSA by implication. The fact that amendments or repeals by implication are not favored may be stated without the citation of legal authority. No amendment of the PSA was accomplished by the passage of the LMRA and any such claim should be rejected. This lawsuit did not involve any claims asserted under the LMRA.

[¶21] Plaintiffs claim that defendants have not previously made the argument that there is no private right of action under the PSA and plaintiffs object to it at this stage of the proceedings. "A post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion. *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051, 1061 (8th Cir. 1993); *Diercks v. Durham*, 959 F.2d 710, 714 (8th Cir. 1992)." Rockport Pharmacy, Inc. v. Digital Simplistics, Inc., 55 F.3d 195, 197 (8th Cir. 1995). The claims of plaintiffs that defendants failed to previously make the arguments are rejected as not accurate. The claims as to no private right of action were previously raised in a timely fashion and may be raised again. It is true that the LMRA contains no provision authorizing a private right of action but this action is not brought under the LMRA. The PSA not only has provisions for enforcement of the Act by the Secretary of Agriculture (7 U.S.C. § 193) but also provides for a private right of action (7 U.S.C. §209). As the jury was instructed, the "Act also provides that any packer violating the Act 'shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.'" This renewed claim of the defendants is again rejected.

[¶22] Defendants largely make the same claims and arguments that they have made previously. The court has previously addressed all such claims and has rejected them. I do so again.

[¶23] As to Professor Schroeder and Professor Hausman, both of whom were subjected to rigorous cross examinations, the jury was instructed, and correctly so, as I have already stated, that they should treat expert testimony just like any other testimony. They were to accept or reject it and give it as much weight as they found it deserved. The jury obviously did that.

Professor Hausman testified something to the effect that, in his opinion, based on his testimony and his theories, he had run over Professor Schroeder's testimony with a bull dozer. Perhaps he instead ran into Schroeder's testimony with a Karmann Ghia or even a mid-size car. None of us were in the jury room and we do not know. Nor should we know in such a hotly contested case as this.

[¶24]   Carrying the arguments of defendants, i.e. that cutout averages of boxed beef have nothing to do with live fed cattle prices, to a logical conclusion would tell us that Congress did not know what they were doing when they passed the mandatory price reporting legislation. Put another way, Congress foisted a worthless and costly reporting system on packers and producers. Yet, although the jury was not told about the involvement of defendants, it is common knowledge that defendants participated heavily in the process of the drafting and enactment of such legislation which they now claim was much ado about absolutely nothing. I reject that argument.

[¶25]   The motion for a judgment as a matter of law should be denied. The request for further oral argument should also be denied. I have heard many arguments, *ad infinitum*, in this case. If I am wrong, the United States Court of Appeals for the Eighth Circuit will tell me so.

[¶26]   Now, therefore,

[¶27]   IT IS ORDERED, as follows:

    1) The renewed motion (Doc. 1035) for a judgment as a matter of law is denied.

    2) The request for oral argument (Doc. 1040) is denied.

[¶28]   Dated this _15th_ day of August, 2006.

                                    BY THE COURT:

                                    CHARLES B. KORNMANN
                                    United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
                DEPUTY
(SEAL)